## No. 8997.
## Orleans Appeal.

---

### WALTER E. TAYLOR, Appellant, v. JOHN E. DOSKEY.

---

(January 5, 1925, Opinion and Decree.)

(January 5, 1925, Rehearing Refused with Reasons.  [Claiborne. J., dissents.])

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Parent and Child— Par. 3, 12.**

An unemancipated minor, whose father is living, and who has not been apprenticed or placed in the care of others, can have no legal residence other than that of his father.

Appeal from the Civil District Court, Hon. Columbus Reid, Judge.

This is a damage suit for personal injuries caused by the negligent act of a minor. There was judgment for defendant and plaintiff appealed.

Judgment reversed.

On a rehearing the amount of the judgment was reduced.

Judge Claiborne dissents for written reasons on file.

A. D. Danziger, attorney for plaintiff and appellant.

Wm. H. Byrnes, Jr., Harry McEnerny, Jr., attorneys for defendant and appellee.

WESTERFIELD, J.  Defendant is sued for damages caused by the negligent act of his son, a minor of 20 years of age.  It is alleged that defendant's son entered a pool room where the plaintiff was playing pool and drawing a revolver from his pocket for the purpose of exhibiting it to a friend caused its discharge in some manner so as to wound plaintiff in his left foot.

The defendant contends that his son was not living or residing with him at the time of the accident and that consequently he cannot be liable under Art. 2318 of the Code.

The case was tried by a jury and resulted in a verdict for defendant upon which a judgment was entered, from which plaintiff appeals.

The judge in charging the jury instructed them that in order to hold a parent in damages for the negligent act of his minor child "the child must reside at the time of the accident with the parent whom it is sought to hold responsible."  This part of the charge was excepted to by plaintiff's counsel who argues that the verdict of the jury upon which the judgment appealed from was based was entirely due to this alleged erroneous statement of the law by the trial judge.

The evidence convinces us that at the time of the accident the defendant's son was not actually residing with his father and mother, who at that time were living together, though the father has since died and his heirs have been made parties to this suit.  On the contrary, we find as a fact that the son was living apart from his parents with a woman whom he called his wife, thought in fact they were unmarried.  The son, a boy of bad habits, had been remonstrated with by his father, who either ordered him away or by continual reproaches and rebukes caused him to leave the parental home.

Under such circumstances the learned counsel for defendant insists that upon the plain letter of code the parent cannot be liable for the tortuous acts of his son because he (the son) was not residing with his parent.  We are referred to Art. 2318, reading as follows:

"The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them or placed by them under the care of other persons, reserving to them recourse against those persons. The same responsibility attaches to tutors."

and to Baudry-Lacontinerie (3rd Ed., Vol. 15), pp. 595, 597, 599, commenting upon a similar article of the Code Napoleon, holding that "The law subordinates to two conditions the responsibility in question. It required (1) That the author of the wrong be a minor; (2) that he reside with his parents."

Our answer to this argument is that the question in our judgment has been foreclosed by the decision of the Supreme Court on Rehearing in Toca vs. Rojas, 152 La. 318; 93 South. 108.

It is true that in the Rojas case the court was only passing upon an exception of no cause of action directed to a petition which failed to allege that the minor resided with his parent at the time of the action of the minor for which it was sought to hold the father responsible, and it is also true that the court expressly stated that

"Whether or not the parental responsibility ceases when the minor quits the paternal roof without the consent of his parents or whether the parents can put an end to parental authority and responsibility by sending the minor away from the parental home, without placing such minor in the care of others is not necessary here to determine and we do not decide."

In other words, the court simply held that the plaintiff need not make such allegation in his petition because the law presumes the child resides with his parents. The distinction which the court makes is in the humble opinion of the writer difficult to grasp since it would seem that if the liability of a parent for his son's torts depended upon the fact of residence with him, that under familiar principles of pleading, the plaintiff should be required

to allege such residence as a material fact essential to the statement of a cause of action, and that he could only be relieved from such necessity by the immateriality of such allegation. However that may be, in holding that the presumption is *juris et de jure* that the unemancipated child resides with its parent the court leaves no room for doubt as to what it would hold when the question is presented on its merits as witness the following excerpts from the opinion:

"The fundamental error upon which the exception of no cause of action is founded, in our opinion, is in assuming that an unemancipated minor, whose father is living, and who has not been apprenticed or placed in the care of others, can have a legal or an actual residence other than that of his father."

"Birth gives rise to paternal control and authority over the child, and, as was tersely stated in Coats vs. Roberts, 35 La. Ann. 891:

"Paternal responsibility is the consequence and offspring of the paternal authority."

"The father may delegate a part of his authority over his minor children to teachers, schoolmasters and others to whom he may intrust them for their education—such as the power of restraint and correction—but he cannot permanently divest himself of any portion of the paternal authority, by contract or otherwise. C. C. 220; Gates vs. Renfroe, 3 La. Ann. 569. He cannot send his minor children away from the paternal home unless he places them in the care of others, in which event he remains responsible for their acts."

"It, therefore, being the law of the case that the minor, John Rojas, could have no other residence than that of his father, that residence continued until changed in some manner provided by law."

If, therefore, a minor can have no other residence than that of his father until the law itself decrees otherwise which, as the court points out in its opinion, occurs when a child is taken away from its parent by judgment of court, military service or as a member of a *posse commitatus* or *ex propria vogore*, the presumption is *juris et de*

*jure* that in all other cases the unemancipated minor resides with his parent and proof to the contrary cannot be received. The suggestion that much that was said in the Rojas case was *obiter* cannot be entertained, for the entire reasoning of the case as well as the sharp dissent by the minority of the court establish the principle which we here apply. It follows, therefore, the father's liability in this case is not affected by the fact that his son was not actually residing with him at the time he committed the acts for which the defendant is sought to be held responsible.

To handle a loaded revolver in a public place and raise the trigger or hammer, as was done by the defendant's son, was negligence *per se*, consequently there remains only the question of the quantum of damages.

The proof in this respect is not very satisfactory. The bullet is shown to have entered the plaintiff's foot and to have been allowed to remain there by attending physicians, who for some reason do not testify. No bones were broken, however, and no claim is made of permanent injury. Plaintiff states that his injury caused him to lose considerable income as an operator and owner of an automobile for hire, which he puts at $250.00 per month. Defendant's son, who was also in that business, challenges this statement and says that such earnings are not possible. It appears to us to be much exaggerated. The defendants are shown to be in poor financial circumstances and their liability in this case is in derogation of common right since they are held to responsibility without fault.

Under the circumstances we think an award of five hundred dollars to plaintiff would meet the proprieties of the case.

It is therefore ordered that the judgment appealed from be reversed and it is now ordered that there be judgment in plaintiff's favor and against the defendants in the sum of Five Hundred Dollars, with costs of both courts.

## DISSENTING OPINION.

CLAIBORNE, J. My colleagues are of the opinion that in the case of Toca vs. Rojas, 152 La. 317; 93 South. 108, the Supreme Court, interpreting Art. C. C. 2318 (2297), decided that the father was responsible for the torts of his minor children, whether his children resided with him or not; and so believing, my colleagues, impelled by that decision have reversed the verdict and judgment of the District Court and have decided this case in favor of the plaintiff. I do not interpret the decision of the Supreme Court as they do, on the contrary, the court said on page 326:

"Whether or not the paternal responsibility ceases when the minor quits the paternal roof without the consent of his parents is not necessary here to determine, and we do not decide."

With my construction of the decision of the Supreme Court, and in the absence of any decision of the Supreme Court on the question other than the Toca case and the case of Coats vs. Roberts, 35 La. Am. 892, I am left free to decide the case as I see it, guided by the Civil Code, and by the lights usually resorted to by Louisiana courts.

Article C. C. 2318 (2297) is copied almost iterally from Article 1384 of the Code Napoleon. Having embodied this Article 1384 in our Code the presumption is that the compilers of the Code adopted with it the meaning attached to it by the framers of the Code Napoleon and by the commentators of that Code.

From our Civil Code and from the latter source I gather that residence with the father is of the essence of his responsibility.

Dumoulin, Vol. III, p. 454, No. 6, says:

"The father is bound only in so far as the child resides with him."

"Fathers will only answer the acts of their minor children residing with them." Report of counsellor Freilhard on Motives of the Law, Session of Pluviose (January), year 12; 39 Dalloz Rep. Leg., p. 296, Notes 5, 7.

"This responsibility ceases if the children do not reside in the paternal home." Report of Bertrand de Grenille, 16 Pluviose, year 12 id.

"Two circumstances are required in order that the civil responsibility of the parents be incurred; the child must be a minor and he must reside with them." 39 Dalloz, id. p. 414, S. 562; 15 id. Supp., p. 599, No. 723.

To the same effect are: 13 Locre, p. 31, S. 11, p. 59, S. 21; 13 Bandry Lac., p. 1131, S. 2904; 4 Boileux, p. 763; 31 Demolombe, p. 498, S. 573-579; 13 Duranton, S. 715; 5 Larombiere, p. 738, S. 2; 2 Sourdat, p. 65, S. 815.

The question of the residence of the minor with his father, the defendant, has been settled adversely to the plaintiff by the verdict of the jury and the judgment of the trial judge who saw and heard the witnesses.

I therefore respectfully dissent.

———

### ON APPLICATION FOR REHEARING.
### PER CURIAM.

The majority of the court were convinced that the legal principle upon which the question of liability depended was determined adversely to defendants by the Supreme Court in the case of Toca vs. Rojas, 152 La. 318. A reconsideration of that case has confirmed our original opinion. Because of the unusual conditions obtaining, particularly the inability of defendants to respond, we have concluded to reduce the quantum of damages from five hundred to three hundred dollars. In all other respects, our original opinion and decree is undisturbed and the application for a rehearing is denied.